154

Pennsylvania Parent Assistance Authority *v.* Grace Sloan, Treasurer of the Commonwealth of Pennsylvania.

Argued August 5, 1975, before Judge ROGERS.

*Joseph J. Carlin*, for plaintiff.

*J. Justin Blewitt, Jr.*, Deputy Attorney General, for defendant.

MEMORANDUM OPINION AND ORDER BY JUDGE ROGERS, September 4, 1975:

The Parent Reimbursement Act for Nonpublic Education Act of August 27, 1971, P.L. 358, 24 P.S. §5701, provided that 23 per cent of the revenue collected by the State from taxes on cigarettes shoud be paid into the State Treasury to the credit of a fund to be known as the Parent Reimbursement Fund and appropriated to a body called the Pennsylvania Parent Assistance Authority. This body of five persons appointed by the Governor was given the responsibility for the administration of the program created by the Act. That program was simply the receipt by the Parent Assistance Authority of statements from parents that their children had completed a school year in a nonpublic school and paying such parents $75 for each child attending elementary school and $150 for each child attending secondary school. The first year which could be completed by any child would of course be that commencing in about September 1971 and ending in about June of 1972.

The Act's constitutionality was promptly contested by taxpayers in the United States District Court for the Eastern District of Pennsylvania and, on July 21, 1972, a three-judge District Court upon finding that more than 90% of the children attending nonpublic schools in Pennsylvania were enrolled in religion-related schools, entered judgment for the plaintiffs and perpetually enjoined the State Treasurer from paying any funds of the Commonwealth pursuant to the Act to parents of children attending nonpublic schools. The Supreme Court of the United States affirmed, holding that the Act violated the mandate of the First Amendment against the sponsorship or

financial support of religion or religious institutions. *Sloan v. Lemon,* 413 U.S. 825 (1973). No payments to parents for the 1971-1972 school year had been made at the time the injunction was entered and, of course, none have since been made. We are told that the Parent Reimbursement Fund contained $150,000,000. We are not told whether this money has in fact been transferred to the General Fund as required by the Act No. 18 approved June 28, 1975, hereinafter discussed.

John F. and Rosemary Kennedy, James R. and Monica Melinson and Richard J. and Toni Braemer, parents of children who attended nonpublic schools during the 1971-72 and 1972-73 school years, on their own, and on behalf of other parents similarly situated, commenced an action in this Court to No. 199 C.D. 1975 against the Authority claiming reimbursement for the tuition paid during those school years. The State Treasurer took the position that the three-judge District Court order of July 12, 1972 affirmed by the U.S. Supreme Court precluded the relief sought. By agreement of the parties we stayed that proceeding pending disposition of a petition for declaratory relief seeking modification of the July 21, 1972 order to be filed in the District Court. A joint petition was filed by the parents and the State Treasurer. The position taken therein was that the District Court's order of July 12, 1972 precluded the relief sought in the Commonwealth Court action and that the District Court should consider modifying its order so as to allow payments of tuition for the two school years (1971-72, 1972-73) before the U.S. Supreme Court decision handed down June 25, 1973 because the parents had relied on the validity of the Act in sending their children to nonpublic schools during those years. On July 21, 1975, the three-judge Court which had issued the order of July 21, 1972 denied relief, declaring itself satisfied "that our final order of July 21, 1972 is clear on its face and binding upon the parties and that its meaning and effect would not be made clearer by

further explanation," and its belief "that the Supreme Court's affirmance of our final order makes any substantive modification of it inappropriate." We are told that this order has been appealed to the Third Circuit Court of Appeals.

On June 28, 1975 the Governor approved Act No. 18 providing pertinently as follows:

"Section 1202.1. Disposition of Certain Funds.— All cigarette tax revenues collected by the Department of Revenue under this act and heretofore paid into the Parent Reimbursement Fund in accordance with the act of August 27, 1971 (P.L. 358, No. 92), known as the 'Parent Reimbursement Act for Nonpublic Education,' shall be transferred into the General Fund, and all such revenues hereinafter collected until June 30, 1976 shall be paid into the General Fund. Cigarette Tax revenues collected on and after July 1, 1976 by the Department shall be paid into the Parent Reimbursement Fund in accordance with the Act of August 27, 1971 (P.L. 358, No. 92)."

It is well known that the transfer of money in the Parent Reimbursement Fund by Act No. 18 was one means of balancing the State's budget for the fiscal year beginning July 1, 1975.

The plaintiff Authority filed its complaint in the instant suit on July 8, 1975, seeking preliminary and permanent injunctive relief by way of (a) restraining the defendant Treasurer of Pennsylvania from effecting the transfer of the Fund mandated by Act No. 18, and (b) directing the State Treasurer to honor any vouchers submitted by the Authority for its "administrative purposes."

We fixed August 5, 1975 as a time for hearing of the plaintiff's application for preliminary relief and as the time also for hearing on the application filed in the meantime by John F. and Rosemary Kennedy, James R. and Monica Melison and Richard J. and Toni Braemer to intervene as parties plaintiff. At the time for hearing

we reserved ruling on the petition to intervene but afforded the parties and the intervenors the opportunity to adduce evidence and present argument. No evidence was offered.

The plaintiff Authority's thesis is as follows: that the Parent Reimbursement Act made the Authority fiduciary of the parents who sent their children to nonpublic schools in the school years 1971-72 and 1972-73; that the parents sent their children to such schools relying on the $75 or $150 reimbursement promised by the Act; that the intervenors here are pursuing their claim for reimbursement in the Federal courts by seeking modification of the order entered in *Lemon v. Sloan, supra;* and that the dissipation of the Fund will render their and other parents' rights nugatory and their case in the Federal courts and in this court (No. 199 C.D. 1975, hereinbefore mentioned) moot for lack of funds for the implementation of the relief which may be granted.

The State Treasurer, in opposition to the application for preliminary injunction, contends that the plaintiff Authority lacks capacity to sue because it has not been given that power by the Legislation; that the Authority lacks standing to sue because, contrary to its claim, it has no fiduciary relationship to parents; that the three-judge District Court's order refusing to modify its order enjoining payments to parents is res judicata, barring the assertion of the claim, based on the same theory, in this court[1]; and that the plaintiff has not alleged and proved a clear right of the parents to reimbursement for tuition paid during the period before the U.S. Supreme Court decision in *Lemon v. Sloan, supra,* was filed because (a)

---

1. In the jointly filed petition for declaratory relief filed in the District Court which produced the July 21, 1975 order refusing to modify the injunction issued July 21, 1972 the following appears: "It is the position of all petitioners that it is the prerogative of the issuing court to interpret its own orders and that such is not the proper role of any other tribunal."

the plaintiff has not proved that any parent in fact relied on the Act in sending his or her children to non-public schools and (b) the legal situation is such that the parents' right to reimbursement, whether or not they relied on the Act, is far from clear.

In support of its contention that the parents are entitled to the reimbursement provided by the Act, the plaintiff relies principally on *Lemon v. Kurtzman,* 411 U.S. 192 (1973), usually, and herein, referred to as *Lemon v. Kurtzman II*. In *Lemon v. Kurtzman,* 403 U.S. 602 (1971), usually and herein referred to as *Lemon v. Kurtzman I,* the U.S. Supreme Court struck down as violative of the religious clauses of the First Amendment a Pennsylvania statute providing for State reimbursement of nonpublic schools for the cost of teachers' salaries, textbooks and instructional materials in specified secular subjects on the ground that it fostered excessive entanglement between government and religion, *inter alia,* because of the necessity it created for State examination of teaching to insure that subsidized instruction was purely secular and of financial records to separate secular from religious expenditures. In *Lemon v. Kurtzman II, supra,* the Supreme Court affirmed an order of a three-judge District Court permitting reimbursement of nonpublic schools for services provided before the filing of decision of the Supreme Court in *Lemon v. Kurtzman I* on the grounds, as we read Chief Justice BURGER'S opinion for four of the justices, that the payments allowed involved no further oversight of the sectarian schools involved, that no preliminary injunction against such payments had been entered and that it did not appear that the nonpublic schools had acted in bad faith in relying on the statute in incurring expenses.

The differences between the instant case now on appeal from the action of the three-judge District Court refusing to modify its restraint of payments and *Lemon v. Kurtzman II* are vast:

(1) The reimbursement of parents for expenses of sectarian education was held in *Lemon v. Sloan, supra,* to be a direct violation of the Establishment clause as sponsorship or financial support of religious institutions; it was not, as was the statute under consideration in *Lemon v. Kurtzman I,* struck down as merely creating excessive entanglement of State and religion, the effects of which, as *Lemon v. Kurtzman II* decided, would be minimal after the fact.

(2) No preliminary injunction against payments pending litigation had been entered in *Lemon v. Kurtzman I,* whereas an injunction prior to any payments had here been entered.

(3) In *Lemon v. Kurtzman II,* the fact of reliance by nonpublic schools on reimbursement under the statute was found by the District Court. There has been no such finding made in the Federal litigation with respect to the parents who, having sent their children to nonpublic schools, seek reimbursement under the Parents Reimbursement Act for Nonpublic Education nor has the fact of reliance been the subject of proof here.

(4) In *Lemon v. Kurtzman I,* the Supreme Court affirmed the District Court judgment that the Act there questioned was unconstitutional and, there having been no injunction entered, remanded the record for the fashioning of an appropriate decree in equity. In *Lemon v. Kurtzman II,* the Supreme Court affirmed the decree entered on remand allowing reimbursement for expenditures made in reliance on the statute. In *Lemon v. Sloan,* the Supreme Court simply affirmed an order of the District Court enjoining payments in reimbursement.

We find nothing in the Federal litigation continuing in this matter, (which it is conceded will control the result) to justify a clear conclusion that the parents of nonpublic school children are, or will be held to be, entitled to the relief sought. We therefore refuse the Authority's application to enjoin the State's use of the money accumu-

lated in the Fund. Our action is further supported by consideration of the public inconvenience which would be caused by an order rendering a large sum of money in the public treasury unavailable for public use contrary to the will of the General Assembly expressed in Act No. 18. We are further unconvinced that the dissipation of the Fund would, as the plaintiff contends, render the parents efforts to obtain reimbursement nugatory and their claims moot. The State defended the Parent Reimbursement Act in *Lemon v. Sloan, supra;* Act No. 18 does not repeal the Parent Reimbursement Act; and the history of the Pennsylvania Legislature's efforts to aid sectarian education suggests that should the Federal litigation be finally decided for the parents the money required to be provided in compliance with such a judgment would be found.

> "A preliminary injunction of any kind should not be granted unless both the right of the plaintiff is clear and immediate and irreparable injury would result were the preliminary injunction not granted. . . ." *McMullan v. Wohlgemuth,* 444 Pa. 563, 572, 281 A.2d 836, 840 (1971).

As previously mentioned, the plaintiff additionally seeks a mandatory preliminary injunction requiring the State Treasurer to honor vouchers for its administrative expenses. The plaintiff did not prove or offer to prove the nature or extent of these expenses. Even were we disposed to grant this limited relief on principle, we would be unable to devise an appropriate order on the record before us.

ORDER

AND NOW, this 4th day of September, 1975, it is ordered that the plaintiff's motion for preliminary injunction be and it is hereby denied.