Pennsylvania Parent Assistance Authority, Plaintiff *v.* Grace Sloan, Treasurer of the Commonwealth of Pennsylvania, Defendant; John F. and Rosemary Kennedy, James R. and Monica Melinson and Richard J. and Toni Braemer, Intervening Plaintiffs.

Argued January 31, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle.

*Joseph J. Carlin,* for plaintiff.

*J. Justin Blewitt, Jr.,* Deputy Attorney General, with him *Robert P. Kane,* Attorney General, for defendant.

OPINION BY JUDGE BLATT, August 8, 1978:

The Pennsylvania Parent Assistance Authority (PPAA) petitioned us in July, 1975 to grant preliminary and permanent injunctive relief against the then State Treasurer (Treasurer) by restraining her from transferring money from the Parent Reimbursement Fund to the Commonwealth's General Fund and by directing her to honor vouchers for PPAA's administrative expenses. After a hearing, a preliminary injunction was denied.[1] A second request for preliminary injunctive relief was subsequently filed, and after a second hearing, this was also denied.[2] Presently before us are preliminary objections to the PPAA's request for equitable relief.

In 1971, our legislature enacted the Parent Reimbursement Act for Nonpublic Education[3] (Act) which provided a plan for tuition reimbursement to parents

---

[1]See the memorandum opinion and order by Judge ROGERS, *Pennsylvania.Parent Assistance Authority v. Sloan,* 21 Pa. Commonwealth Ct. 154, 343 A.2d 706 (1975).

[2] This Court's memorandum opinion and order of December 11, 1975 have not been reported.

[3] Act of August 27, 1971, P.L. 358, *as amended,* 24 P.S. §5701 et seq. · · ·

sending their children to nonpublic schools. The PP-AA was created to administer the program, and a Parent Reimbursement Fund (Fund) was established from the proceeds of a tax on cigarettes. The tuition reimbursement plan was subsequently declared unconstitutional by the United States Supreme Court in *Sloan v. Lemon,* 413 U.S. 825, *rehearing denied,* 414 U.S. 881 (1973). The PPAA has stipulated that parents of children attending nonpublic schools are not entitled to tuition reimbursement for any period prior to the determination of the Act's unconstitutionality and has withdrawn its first count restraining the Treasurer from transferring Fund money to the General Fund pursuant to specific legislation.[4] It argues, nevertheless, that this Court may order the Treasurer to honor its vouchers for the payment of expenses incident to the closing of its offices. These vouchers represent requests for payment of such outstanding debts as rent on the PPAA's office, its telephone bill, salaries for temporary clerical help, and counsel fees. The Treasurer has filed a preliminary objection in the nature of a demurrer on the basis that this second count fails to state a cause of action for which relief may be granted in equity.

We must agree that the Treasurer has no legal authority to pay the vouchers in question here. Nor do we have the power to order their payment. As we have recently stated in *Shapp v. Sloan,* 27 Pa. Common-

---

[4] Act of July 22, 1970, P.L. 513, *as amended,* added by Section 2 of the Act of June 28, 1975, P.L. 36, *as amended,* 72 P.S. §3169.1202.1 which provided:

All cigarette tax revenues collected by the Department of Revenue under this act and heretofore paid into the Parent Reimbursement Fund in accordance with the . . . 'Parent Reimbursement Act for Nonpublic Education,' shall be transferred into the General Fund, and all such revenues hereinafter collected shall be paid into the General Fund.

wealth Ct. 312, 323, 367 A.2d 791, 797-8 (1976); aff'd, Pa.   ,   A.2d    (Nos. 4, 214 January Term 1977, 586 January Term 1976, filed July 19, 1978).

> In our opinion, Article III, Section 24, of our Constitution mandates that money paid into the State Treasury, whether derived from State taxation or any other source, may be paid out of the State Treasury only by legislative action in the form of any appropriation act or in the form of other statutory enactment of general or limited application as to particular subjects.

The Treasurer acted properly in transferring all money remaining in the Parent Reimbursement Fund into the General Fund, having been authorized by the legislature to do so. There is simply no money now in that fund, therefore, from which these vouchers may be paid, and, inasmuch as the Act itself explicitly provided that none of the PPAA's obligations or debts could be deemed to be obligations of the Commonwealth, it is clear that money from the General Fund may not be used to honor the PPAA's vouchers either:

> The authority shall have no power, at any time or in any manner to pledge the credit or taxing power of the Commonwealth, nor shall any of its obligations or debts be deemed to be obligations of the Commonwealth. . . .

Section 4 of the Act, 24 P.S. §5704.

A well-established equitable principle is that equity follows the law, and, our Supreme Court has said:

> Even recognizing that a court of equity has broad powers, '[i]t is a mistake to suppose, that a court of equity is amenable to no law, either common or statute, and assumes the rule of an arbitrary legislator in every particular case.' Blackstone's Commentaries on the Law 732 (B. Gavit ed. 1941).

*First Federal Savings and Loan Association v. Swift,*
457 Pa. 206, 210, 321 A.2d 895, 897 (1974). *See also
Central Storage & Transfer Co. v. Kaplan,* 37 Pa.
Commonwealth Ct. 105, 389 A.2d 711 (1978).

This Court, sitting in equity, cannot and will not order
the Treasurer to perform an unlawful act, and we
must, therefore, sustain the Treasurer's demurrer to
the second count and dismiss the PPAA's complaint.

### ORDER

AND Now, this 8th day of August, 1978, the plain-
tiff has withdrawn the first count of its complaint and
the defendant's preliminary objection in the nature of
a demurrer to the second count is hereby sustained,
and the complaint is therefore dismissed.