## Fitler *versus* The Commonwealth.

The Act 30th March 1811 gives an appeal from the decision of the accounting officers to the Common Pleas of Dauphin county, in all cases where they disallow a *claim* against the Commonwealth.

One who gives a receipt to a state agent, without actual payment, has no just claim against the Commonwealth, although he may have given notice to the accounting officers to disallow such receipt as a credit, in a settlement of the defaulting agent's accounts.

ERROR to the Common Pleas of *Dauphin county*.

This was an appeal by Edwin H. Fitler from the decision of the auditor-general and state treasurer, disallowing a claim against the Commonwealth of $1366, for oil furnished to the superintendent of motive power on the Philadelphia and Columbia Railroad.

The following facts were found by a special verdict:—In November 1848, and February 1849, Edwin H. Fitler furnished to Augustine Holmes, the superintendent, oil for the use of the Commonwealth, to the amount of $1366.

On the 10th February 1849, he gave the superintendent a receipt in full; but without actual payment of the money; and also without any express agreement that the Commonwealth was to be released from liability.

On the 1st January 1849, the superintendent drew $5000 from the state treasury; and on the 7th February following, $7000, which was the last money paid to him.    His successor was

[Fitler v. The Commonwealth.]

appointed on the 2d February, the appointment to take effect from the 11th of the same month.

Edwin H. Fitler's receipt was not exhibited to the accountant department, until the latter end of February 1849; and notice was given to the auditor-general, before Holmes's account was finally settled, not to allow credit for the same, as the amount had not been paid to Fitler.

Holmes's account was finally settled on the 3d May 1851, and Fitler's receipt was allowed as a credit; the settlement exhibited a balance of $133.04 against Holmes; which was paid by the sureties in his official bond. Holmes died insolvent in the fall of 1849.

The learned judge (PEARSON, P. J.) charged the jury that the debt was discharged by the receipt so far as the state was concerned, and could not be revived against the sureties of Holmes, who were released from their obligation, *pro tanto*, both in law and equity.

To this charge the plaintiff's counsel excepted; and the court below having subsequently entered judgment for the Commonwealth on the special verdict, the plaintiff removed the cause to this court, and here assigned the same for error.

*G. W. Harris*, for the plaintiff in error, cited Fuller *v.* Crittenden, 9 *Conn.* 406; 1 *Greenl. Ev.*, §§ 208, 209, 212, 305; Dutton *v.* Tilden, 1 *Harris* 46; Hamilton *v.* McGuire, 3 *S. & R.* 355; Jones *v.* Patterson, 1 *W. & S.* 321–4; Gue *v.* Kline, 1 *Harris* 60; Patterson *v.* Lytle, 1 *Jones* 53; Cook *v.* Irvine, 5 *S. & R.* 499; West *v.* Jones, 9 *Watts* 27; Work *v.* Hoofnagle, 1 *Yeates* 506.

*Knox, Attorney-General*, for the Commonwealth.

The opinion of the court was delivered by

WOODWARD, J.—The first question raised upon this record is, whether the Common Pleas of Dauphin county had jurisdiction to entertain the appeal from the auditor-general. It is argued, upon the part of the Commonwealth, that the Act of Assembly of 30th March 1811 gives an appeal from the settlement and adjustment of the auditor-general, only in cases of "*accounts*" between the Commonwealth and others, and that Fitler had no account, properly speaking, with the Commonwealth, and that the rejection of his claim was not a settlement from which an appeal would lie.

The power conferred by the 1st section of that act upon the auditor-general, is to examine and adjust "all accounts between the Commonwealth" and public officers or others,—and also "the accounts of all persons having *claims* on the Commonwealth." The 22d section gives the right of appeal to any party dissatisfied with the auditor-general's settlement of "his, her, or their *account*."

[Fitler *v.* The Commonwealth.]

The special verdict finds that Fitler "furnished, for the use of the Commonwealth, oil, as per a statement of his *account* filed in this case." The oil was furnished in two lots, the first on the 28th November 1848, amounting to $619.70, the other in February 1849, to the amount of $747.20.

Now if this was not, strictly speaking, an account with the Commonwealth, such as is contemplated by the first clause of the first section of the Act of 1811, how can it be doubted that it was the account of a person having a *claim* on the Commonwealth, and therefore within the second clause of that section?

"An account," says Webster, "is an entry in a book or on paper, of things bought or sold, of payments, services, &c., including the names of the parties to the transaction, date, and price or value of the thing." The special verdict finds that Fitler's entry came up to all these conditions. And it was a claim against the Commonwealth, though furnished to her agents. Ever since the state commenced her system of internal improvements, her supplies have been obtained through agents; and what has been furnished to them for the use of the state has constituted a claim on her, and not on the agent. Such, indeed, is the case with all the necessaries furnished to the several departments; they are contracted for, not by the state in her original, sovereign capacity, but through the instrumentality of agents; and yet the account is made up, and properly so, against the state.

A sovereign can be sued only in the way of his own appointment, and he may prescribe any mode he pleases. By the Act of 1811, the Commonwealth has signified the mode in which it is her pleasure to permit the citizens to enforce their claims, and it would be inconsistent with her dignity to construe the act so strictly as to exclude such a suitor as the present. The rejection of his claim by the auditor-general was as much a settlement and adjustment of it within the meaning of the act, as if that officer had reduced prices, restated the account, allowed some items and disallowed others. It was the final decision, on a fairly presented case, of the first tribunal provided by the Commonwealth, and thereupon an appeal lay to the next appointed tribunal, because the sovereign had condescended to be answerable there.

In Morris's Case, which passed through this court four years ago, and which was very similar to this, a special Act of Assembly had, from abundance of caution, been obtained to authorize the appeal, but the opinion of the Common Pleas, and I believe of this bench also, was, that it would have been sustainable under the Act of 1811. Such, it is believed, has been the generally received opinion; and as it comports best with the dignity of the Commonwealth, secures to the citizen the right of trial by jury, and by diminishing the responsibility of the auditor-general, leaves him

[Fitler *v.* The Commonwealth.]

more free to guard the treasury, we feel great satisfaction in adopting it.

If the appeal was properly taken, was there error in the court's entry of judgment for the Commonwealth on the special verdict? This is the only other question in the cause.

The moral obligation to pay one's debts and to owe no man anything, incumbent on every citizen, presses with peculiar force upon the Commonwealth. She should be, in her corporate character, an example of honesty and punctuality to all her citizens and sister sovereigns. But I know of no rule, of either morals or law, which requires her to pay her debts twice.

I have already said, she contracts for necessaries through agents, and when she has put money into the hands of her agent to pay for what she wants, and the seller has given him a receipt in full for the purchased article, I cannot comprehend the principle on which she should be expected to pay for it again.

The special verdict finds that on the 10th February 1849, the plaintiff gave to Augustine Holmes, the superintendent on the Columbia Railroad, a receipt for $1366.90 in full of his account. At that time Holmes had the money in his hands to pay this bill, for on the 7th January 1849, he drew $5000 from the treasury, and on the 7th February of the same year he drew his last draft of $7000.

He was forbidden by the joint resolution of the 18th March 1837, " to obtain or procure any receipt from any person for any debt due by or from the Commonwealth, without the actual payment of the money;" which, being a public law, the plaintiff was bound to notice.

What more was the Commonwealth bound to do for the protection of Mr. Fitler? It had placed ample means in the hands of the appropriate agent to pay him—it had forbidden any receipt to be given or taken except for actual payment, and yet, in disregard both of the public law and of his own interest, the plaintiff, without receiving his money, gave the state's agent a receipt in full, enabling him thereby to claim a credit for the amount at the accounting department.

The plaintiff's claim is destitute of all merit. Whether he meant to enable Holmes to perpetrate a fraud on the treasury, or only meant to give him the use of his money by way of a loan, his discharge of the Commonwealth was complete and final. If he have lost his money by reason of Holmes's insolvency, he has no better claim, in equity or law, on the Commonwealth, than any other creditors of insolvent debtors might prefer; and if the public treasury were opened to all such creditors, it would be exhausted the day it was opened.

It is said notice was given to the auditor-general before Holmes's account was finally settled, cautioning him not to allow a credit for

this receipt; but that availed nothing, for with or without the credit Holmes was still a defaulter, and his bail had to respond. And even if his bail could have been made liable for the amount of the receipt (a fair subject of doubt), it would have been extremely inequitable to throw upon an innocent surety a loss occasioned by the imprudence of Fitler in giving a false receipt. The rule is, that a loss which must be borne by one of two equally innocent parties, shall fall on him whose act occasioned it.

The pecuniary transactions of the Commonwealth must be conducted on some general system, if peculation and confusion are to be excluded. She never would be done paying debts, if receipts in full of her creditors, given to her disbursing agents, could be treated as nullities.

We think the court were right on both points—in sustaining the appeal, and entering judgment for the Commonwealth on the special verdict.

The judgment is affirmed.