Merchants' Warehouse Company *v.* Gelder et al.,
Appellants.

2

Argued January 14, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Harry F. Stambaugh,* with him *Horace A. Segelbaum,* Deputy Attorney General, and *James H. Duff,* Attorney General, for appellants.

*Joseph W. Henderson,* with him *George M. Brodhead, Jr.,* of *Rawle & Henderson, James Henry Booser* and *Sterling G. McNees,* of *McNees, Wallace & Nurick,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 20, 1944:

The Merchants' Warehouse Company of Pennsylvania (hereinafter referred to as Warehouse), made a claim on the Pennsylvania Liquor Control Board (hereinafter referred to as the Board), for $108,607.36 for

services incident to the storage and distribution of liquor in the Philadelphia district. The claim was based upon a contract between the parties covering a period from November 30, 1936 to May 31, 1938 and was to continue for another two years if neither party had given written notice of termination three months prior to the end of the term. On May 28, 1938, the Board advised Warehouse of its intention to seek bids for a new contract for the period from June 27, 1938 to May 31, 1940, but requested Warehouse to continue its services and transportation for the month of June 1938 on the contractual basis. For these services during June 1938 Warehouse was paid. Warehouse on June 17, 1938 filed its complaint to restrain the Board from awarding the contract to any person or company other than the claimant. The Court of Common Pleas of Dauphin County, after a hearing granted a permanent injunction on May 20, 1939. This court reversed the decree of the Dauphin County Court enabling the Board to make a new contract: *Merchants' Warehouse Company v. Hitchler*, 335 Pa. 465. However, Warehouse continued to provide services and transportation in the Philadelphia district for the Board from July 1, 1938 until December 31, 1939, and Warehouse claimed that since there was no contract or agreement covering its services that it was entitled to a reasonable value for these services during that period, amounting to $249,020.32. It made an additional claim against the Board for transportation services in the amount of $36,930.70, which was based upon the legal tariffs filed with the Public Utility Commission by the Union Transfer Affiliated Company, the common carrier which actually performed the transportation services. There was a further claim of $2,832.86 for demurrage expenses incurred during the months of November and December of 1936. The total claim was for $288,783.88. Warehouse gave credits to the Board totaling $156,078.68, representing recoveries by Warehouse from insurance companies covering certain losses; the entire

credit given to the Board was for $180,176.52. The balance amounting to $108,607.32, constituted the litigated claim.

The Board refused to pay the claim. Warehouse thereupon filed its formal claim with the Auditor General and State Treasurer of the Commonwealth, pursuant to the provisions of the Act of March 30, 1811, P. L. 145 [1] (5 Sm. L. 228) and the Fiscal Code of April 9, 1929, P. L. 343 (72 PS 1 et seq.).[2] To the statement of

---

[1] "Sec. 1. . . . All accounts between the commonwealth and any person or persons, body politic or corporate, . . . also the accounts of all persons having claims on the commonwealth, except as are hereinafter excepted, shall be examined and adjusted by the auditor general according to law and equity."

Section 3: ". . . When any public account is examined and adjusted, . . . it shall be submitted . . . to the state treasurer for his revision and approbation. . ."

Section 7: ". . . In all cases where the laws recognize a claim on the commonwealth and there is no appropriation of money to pay the same, it shall be the duty of the auditor-general and state treasurer to adjust and settle the account of such claims as other accounts, and the auditor-general shall immediately report the same to the legislature, if in session, but if not in session, then during the first week of the next ensuing session."

Section 11 provided for an appeal to the Court of Common Pleas.

Sections 1, 3 and 11 of the Act of March 30, 1811, were repealed by Sec. 1805(b) of the Fiscal Code of April 9, 1929, P. L. 343 and were replaced by sections of the Code.

[2] Article IV, Section 405 of the Fiscal Code of April 9, 1929, P. L. 343, provides: "The Department of the Auditor General shall examine and adjust, according to law and equity the account of all persons, associations, or corporations, having claims against the Commonwealth." (72 PS Sec. 405)

Article X, Section 1003 of the Code provides: "The Auditor General and State Treasurer shall continue to have the power to adjust and settle claims against the Commonwealth, as now provided by law, . . ." as to the procedure, see 72 PS sec. 1003.

Article X, Section 1004 of the Code provides: ". . . Any person, feeling himself aggrieved by the settlement made by the . . . Department of Revenue and deducted from his claim, may proceed, as in other cases, to file a petition . . . for review, and an appeal, but, if

claim of Warehouse, the Board filed its Answer admitting the claim in the sum of $61,270.97, but pleading a set-off for inventory charges and traffic claims of $18,608.79 and a counter-claim for damages of $57,251.84 against Warehouse.

The counterclaim grew out of the equity proceedings hereinbefore referred to. The Board claimed that the Terminal Warehouse Company of Philadelphia, Pa., was the lowest responsible bidder and that its bid would have been accepted and a contract executed pursuant thereto had the Board not been restrained from so doing by the injunction. It contended that between July 1, 1938 and July 21, 1939, it had no alternative than to permit Warehouse to furnish the services for which it fixed the charges set forth in its claim but that these charges were based upon rates higher than those that could have been secured from the Terminal Warehouse Company, set forth in their counterclaim, causing the Liquor Board a loss for this period of $57,251.84. The Board therefore asked that a settlement be made in its favor in the amount of $14,589.66.

Warehouse filed a reply to the set-off averring that the amount of $18,608.79 was allowed in its statement of claim and denying the counterclaim because the Terminal Warehouse Company's unaccepted bid was not proof of the reasonable value of its services, and that the

he feels aggrieved both by the action of the Auditor General and State Treasurer and of the Department of Revenue, his petition for review, filed with the Board of Finance and Revenue, and his appeal to the courts shall consolidate all questions which he desires to raise." (72 PS Sec. 1004.)

Article XI, Sec. 1104 of the Code, provides for an appeal "to the court of common pleas of Dauphin County from the decision of the Board of Finance and Revenue, or from the decision of the Department of Revenue, or of the Department of the Auditor General, as the case may be. . . . "Every such appeal shall be accompanied with a specification of objections to the settlement, resettlement or other decision, as the case may be, and the party appealing shall enter sufficient security. . ." (72 PS Section 1104.)

bid was disqualified because of the material alteration, and that the figures presented in the counterclaim and contained in the unaccepted bid were incorrect.

The issues raised went to a hearing before the Auditor General and the Treasuer,[3] in which Warehouse was represented by its Counsel and the Board was represented by two Deputies Attorney General of the Commonwealth. Testimony under oath was taken and witnesses were examined and cross-examined. Briefs were filed by the respective parties. The Auditor General and the State Treasurer, on July 21, 1942, in a formal opinion adjusted and settled the claim in favor of Warehouse in the amount of $50,681.40, and disallowed the counterclaim. No petition for resettlement or review and no appeal was filed with the Board of Finance and Review nor did either of the parties ask for a writ of certiorari to obtain judicial review of the action. The Liquor Board then upon advice of the Attorney General refused to pay the settlement. On November 10, 1942, Warehouse filed its petition for an alternative writ of mandamus setting forth that the decision of the Auditor General and State Treasurer had the force and effect of a judgment, and praying that the Board be required to prepare its requisition in the amount of its settlement and to present it to the Auditor General for approval. The Court below awarded the alternative writ of mandamus to which the Board duly filed its return. In this return, the Board averred that the settlement was not in accordance with law and equity, in that the settlement disallowed the Commonwealth's claim for loss due to the injunction, and allowed upon a quantum meruit basis the claim of the plaintiff for warehousing and transportation services rendered during the last three months of the year

---

[3] Neither of these two officials sat at the hearing; the Auditor General being represented by Oliver C. Cohen, Esq., and John F. Breslin, and the State Treasurer was represented by Sydney Reuben, Esq.

1939, and averred therein that "there was no dispute as to the facts, and the question of law arising therefrom should have been submitted by the Auditor General and the State Treasurer to the Attorney. General for his advice, as required by Section 512 of The Administrative Code of 1929 (Act of April 9, 1929, P. L. 177, 71 PS Sec. 192)." It further "averred that the statutes under which the proceeding before the Auditor General and State Treasurer was instituted, to wit; the Act of March 30, 1811, P. L. 145 (72 PS Sec. 4087 et seq.) and The Fiscal Code of April 9, 1929, P. L. 343 (72 PS Sec. 1 et seq.) do not provide for an appeal by the Commonwealth or the Board from the settlement of the Auditor General and State Treasurer allowing a claim against the Commonwealth, neither do such statutes provide for any further proceeding by the Commonwealth subsequent to such settlement; . . ." Issue was joined by Warehouse and by stipulation of respective counsel the record before the fiscal officials was certified to the Court of Common Pleas of Dauphin County without taking any additional testimony, and set down for argument. The court below found that the return presented no valid defense, overruled it and directed a peremptory mandamus to issue. From this final order the Board took this appeal.

The sole question presented to us by this record is:

Where there is no right to a judicial remedy against the Commonwealth and the legislature created an independent tribunal giving it jurisdiction over such claims, are its decisions subject to determination by the Attorney General?

The Commonwealth cannot be sued except with its own constitutional or legislative consent. This is the situation where the state is the real defendant. The Pennsylvania Liquor Control Board is an agency of this Commonwealth created by it for the purpose of carrying out a state function and for this reason is clothed with

immunity from suit.[4] Article I, Section 11 of the Constitution modified the limitation of immunity by permitting suits to "be brought against the Commonwealth in such manner, in such courts and in such cases as the legislature may direct." The legislature created the tribunal which was given "the power to adjust and settle claims against the Commonwealth" and provided the manner of such settlements and for the right of appeal for a claimant feeling himself aggrieved by the settlement: Acts of 1811, P. L. 145, and 1929, P. L. 343 (supra). Warehouse submitted its cause to the tribunal thus established. That tribunal had the power to and did adjust and settle the claim against the Commonwealth. No attempt was made by either party to obtain a judicial review of such settlement.

The Attorney General urges that such a tribunal's decisions are subject to the determination of the Department of Justice, because the Auditor General and State Treasurer the two officials constituting the tribunal are executive officers and part of the executive department of this Commonwealth by virtue of Article IV, section 1 of the Constitution, and as such under our historic divisions of government "are not vested with any *judicial* authority," and their "judgment" is therefore of no judicial effect. He also argues that the Administrative Code of 1929 [5] (Act of April 9, 1929, P. L. 177, 71 P.S. §192) re-

---

[4] Congress up to 1939 created at least forty corporations discharging governmental functions with the power "to sue and be sued." A list of such corporations can be found in the footnote in *Keifer v. R.F.C.*, 306 U. S. 381, 390 note. New York and Illinois have completely released their sovereign immunity by allowing an adjudication in a special state court of all actions in tort and contract. Ill. Stat. Ann. (Jones 1936), Sec. 126.062; Court of Claims Act, N. Y. Laws 1929, c.467, Sec. 12a.

[5] Article V, Sec. 512 of this code provides: "Whenever any department, board, commission, or officer of the State Government, shall require legal advice concerning its conduct or operation, or when any legal difficulty or dispute arises, or litigation is commenced

quires such executive officer to request the advice of the Department of Justice and to follow that advice when given by the Department of Justice, and if they fail to follow the advice of this Department and determine the issues of law and fact against its legal advice it is in clear violation of the Code and their determination must fail. We must negative this contention.

As late as 1927 in the case of *Commonwealth v. Eastern Paving Company*, 288 Pa. 571, 576, 136 A. 853, we held, ". . . That legislation (the Act of 1811) was enacted for the benefit of creditors, who, theretofore, had no manner of enforcing a just demand against the sovereign, and permitted an adjustment and approval of a claim by the auditor general and state treasurer, whose

or to be commenced in which any department, board, commission, or officer, is concerned, . . . it shall be the duty of such department, board, commission, or officer, to refer the same to the Department of Justice.

"It shall be the duty of any department, board, commission, or officer, having requested and received legal advice from the Department of Justice regarding the official duty of such department, board, commission, or officer, to folow the same. . . ."

Article IX, Sec. 902 of this Code (71 PS 292) provides: "The Department of Justice shall have the power, and its duty shall be:

"(a) To furnish legal advice to the Governor, and to all administrative departments, boards, commissions, and officers of the State Government, concerning any matter or thing arising in connection with the exercise of the official powers or the performance of the official duties of the Governor, or such administrative departments, boards, commissions, or officers;

"(b) To supervise, direct and control all of the legal business of every administrative department, board, and commission of the State Government": 1929, April 9, P. L. 177, art. IX, Section 902.

Article IX, Section 903 (71 PS 293) provides: "The Department of Justice shall have the power, and its duty shall be:

"(b) To represent the Commonwealth, or any department, board, commission, or officer thereof, in any litigation to which the Commonwealth or such department, board, commission, or officer, may be a party, or in which the Commonwealth or such department, board, commission, or officer, is permitted or required by law to intervene or interplead": 1929, April 9, P. L. 177, art. IX, Sec. 903 (71 PS Sec. 293).

action was subject to review on appeal. They were not bound to approve any demand presented, but to use their judicial discretion in passing on its validity. . . ."

In the earlier cases in which we reviewed the Act of 1811 (supra) we held: "It is very apparent from the various provisions of the Act that the legislature intended to make a settlement of the accounts mentioned in it, by the Auditor General and State Treasurer in the manner therein directed, final and conclusive, unless appealed from within the time allowed by the Act for that purpose": *Commonwealth v. Reitzel*, 9 W. & S. 109. In *Hutchinson v. Commonwealth*, 6 Pa. 124, we said: "For the purpose of settling the accounts of the persons named therein, the Act of 1811 confers upon the Auditor-General and State Treasurer *a judicial power*, and gives to their decisions, within the scope of the authority vested in them, the force and effect of a judgment which, unappealed from within the period prescribed by the statute, becomes final, and cannot afterwards be questioned either collaterally or directly in an action brought to recover the amount thus ascertained to be due." (Italics supplied).

In *Fitler v. Commonwealth*, 31 Pa. 406, 408, we held: "A sovereign can be sued only in the way of his own appointment, and he may prescribe any mode he pleases. By the Act of 1811, the Commonwealth has signified the mode in which it is her pleasure to permit the citizens to enforce their claims, . . ." We are not privileged to set aside a legislative enactment appointing the manner in which this Commonwealth can be sued, and this is so even though the Commonwealth limited its own right to an appeal. Nor are we privileged to prescribe other modes, as we would do if we held that the decisions of the Auditor General and State Treasurer constituting such tribunal are subject to the determination of the Department of Justice.

The duty imposed by Article V, Section 512 of the Code of 1929, supra, on "any department, board, com-

mission, or officer of the State Government" to "follow" the "legal advice" it has "requested and received" from the Department of Justice, is not imposed upon the Auditor General and the State Treasurer when they are acting as a judicial or quasi-judicial tribunal. It is imposed on them only when they are acting in an executive capacity. By Article IV, Section 1 of the Constitution they are made instrumentalities of the Executive department of the state government. When thus acting they are, of course, bound by the Administrative Code: *Commonwealth ex rel. v. Lewis, Auditor General*, 282 Pa. 306, 127 A. 828; *Piccirelli Bros. v. Lewis, Auditor General*, 282 Pa. 328. But when they, as here, constitute (as was said in *Fitler v. Commonwealth*, 31 Pa. 406, 408) "the first tribunal provided by the Commonwealth" for the settlement and adjustments of claims against it, they are not acting as a part of the executive branch of the government of the Commonwealth and are not subject to the Administrative Code. They are a judicial tribunal [6] to which claims against the Commonwealth may be submitted for determination upon its own independent judgment as to both law and facts. The Attorney General is not "the next appointed tribunal" (quoting from the *Fitler* case, supra) and whatever advice he gives this tribunal is merely gratuitous. By Article V, Section 1 of the Constitution the judicial power of this Commonwealth is vested in the courts expressly named in that section, "and in such other courts

---

[6] In *Morgan v. United States*, 298 U. S. 468, 480, Chief Justice HUGHES speaking for the U. S. Supreme Court held that the function of the Secretary of Agriculture in fixing rates under the Packers and Stockyard Act is not that of ordinary executive action, but is both legislative and judicial in quality. He said: "Hence it is frequently described as a proceeding of a quasi-judicial character". He also says of such proceedings: "Assistants may prosecute inquiries. Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. Argument may be oral or written. The requirements are not technical. But there must be a hearing in a substantial sense."

as the General Assembly may from time to time establish." The Board of Claims, established by the Act of 1811 and prior and subsequent legislation herein set forth, must be considered as such a court. Otherwise it would follow that the constitutional permission set forth in Section 11, Article I, that "suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the legislature may by law direct," has not been availed of by the legislature and that there is no forum in which claims against the Commonwealth may be adjusted and settled. Certainly since 1782,[7] the General Assembly has reposed this judicial duty in its fiscal officer or officers. As further evidence of the legislative intent to permit such claims to be adjudicated, it provided that if the claimant is dissatisfied with the adjudication and determination of it he may appeal to the Court of Common Pleas of Dauphin County, subject to like proceedings in common suits in this court. The Commonwealth may confer or withhold the right of appeal from these decisions. The legislature conferred upon the Commonwealth no right to such an appeal.

The decision of the Auditor General and State Treasurer, herein complained of, has the force and effect of a final judgment which cannot "be questioned either collaterally or directly in an action brought to recover the amounts thus ascertained to be due."

The judgment of the Court below is affirmed.

---

[7] The Act of April 13, 1782, 2 Sm. L. 19, as amended by the Act of February 18, 1785, 11 Pa. St. at L. 435 (chap. 1533), provided that the Comptroller General shall be "authorized and empowered to liquidate and settle . . . all claims against the Commonwealth . . ." and provided for an "appeal from such settlement or award of said Comptroller General" to the Supreme Court. The Act of March 17, 1809, P. L. 71, created the position of Auditor General and vested him with all powers possessed by the Register General or previously by the Comptroller General, and provided for the settlement of accounts and claims against the Commonwealth by the Auditor General and State Treasurer.