Central Storage & Transfer Co., Petitioner *v.* Henry H. Kaplan, Chairman, Daniel W. Pennick, Member, Edwin Winner, Member, Pennsylvania Liquor Control Board, Respondents.

Argued June 5, 1978, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Thomas D. Caldwell, Jr.,* with him *Caldwell, Clouser & Kearns,* for appellant.

*J. Leonard Langan,* Assistant Attorney General, with him *Kenneth W. Makowski,* Acting Chief Counsel, for appellee.

OPINION BY JUDGE ROGERS, August 1, 1978:

The State Board of Claims, composed of the Auditor General and State Treasurer, awarded Central Storage and Transfer Company (Central) $197,425.25 against the Commonwealth, acting by its Pennsylvania Liquor Control Board (LCB). The Board of Claims, on the LCB's application, refused to resettle the award. The LCB then filed its petition requesting review of the Board of Claims' action by the Board of Finance and Revenue. The Board of Finance and Revenue, which is composed of the State Treasurer, the Attorney General, the Secretary of the Commonwealth, the Auditor General and the Secretary of Revenue, reversed the order of the Board of Claims and resettled the claim in favor of the LCB and against Central. Central has appealed the action of the Board of Finance and Revenue to this Court.

Central's action before the Board of Claims taken pursuant to Section 1003 of The Fiscal Code,[1] 72 P.S. §1003, was for money spent by it on alterations to a warehouse made, it says, in reliance on oral assurances of representatives of the LCB that the LCB would rent the warehouse so altered. The LCB defended on the ground that there was no enforceable contract of lease

---

[1] Act of April 9, 1929, P.L. 343, *as amended.*

binding the Commonwealth because no lease was executed in behalf of the Commonwealth in the manner mandated by statute. The Board of Claims, after hearing, concluded that although no lease was executed in behalf of the Commonwealth as the statutes required, "we do have here a situation warranting the exercise of this Board's equitable jurisdiction" and that "equitable consideration of [the] claim" demanded an award to Central.

On October 8, 1976, the LCB filed with this Court a petition for review from the Board of Claims' decision which we later quashed *sua sponte* for lack of jurisdiction.[2] On December 15, 1976, the LCB filed a petition for resettlement which was denied by the Board of Claims. On appeal, the Board of Finance and Revenue reversed and resettled Central's claim in favor of the

---

[2] Central argues that we may entertain the LCB's petition for review from the Board of Claims' decision. This contention is totally without merit and is contrary to procedures set out in Sections 1102, 1103 and 1104 of The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §§1102, 1103 and 1104. Section 1102 provides that a party seeking review of a settlement made by the Board of Claims must first file a petition for resettlement with that body. Thereafter, a petition for review may be filed with the Board of Finance and Revenue pursuant to Section 1103 and then to the Commonwealth Court in accordance with Section 1104. *See also Airport Inn v. Pennsylvania Liquor Control Board*, 10 Pa. Commonwealth Ct. 362, 310 A.2d 723 (1973). The Commonwealth, as sovereign, may be sued only in the manner provided. *Fitler v. Commonwealth*, 31 Pa. 406 (1858). We also note that Section 509(e)(1) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, *as amended*, 17 P.S. §211.509(e)(1), provides that:

(e) Nothing in this act contained shall repeal, modify or supplant any law in so far as it confers authority, power or jurisdiction upon . . . :

(1) The Board of Claims created by the act of March 30, 1811 (P.L. 145) . . . and continued under Section 1003 of the act of April 9, 1929 (P.L. 343), known as 'The Fiscal Code' [72 P.S. §1003].

LCB without findings of fact or conclusions of law or discussion. This appeal by Central followed.

Section 1104(d) of The Fiscal Code, 72 P.S. §1104 (d), provides that appeals to this Court from the Board of Finance and Revenue "shall be hearings de novo." Happily the parties have stipulated that the record here shall be that made before the Board of Claims. We in turn adopt as our own the following findings of the Board of Claims:

3. During the summer of 1972, the Director, Bureau of State Stores, of the Defendant Pennsylvania Liquor Control Board, hereinafter referred to as 'Board,' and the Chief, Real Estate and Equipment Division of the Bureau of State Stores, Pennsylvania Liquor Control Board, at the direction of the Board, opened negotiations for the leasing of warehouse and office space in a warehouse owned by [Central], located at 3500 Industrial Road, which was then under construction.

4. Pursuant to instructions of the Board, its agent informed [Central] that if a portion of the warehouse in question were constructed or altered to the Board's specifications, the Board would lease (a) 10,510 square feet of warehouse space on the first floor; (b) 12,490 feet of warehouse space on the second floor; and (c) 459 feet of office space on the second floor, for a period from October 1, 1972 to September 30, 1977, at a yearly rental of $34,680.00 to be paid at a rate of $2,890.00 per month.

5. Pursuant to the instructions received from the Board's representatives [Central] completed a real estate option dated September 8, 1972, incorporating the foregoing terms.

6. Defendant, Liquor Control Board, caused drawings to be made for the construction and alteration of the foresaid premises, including facilities for the installation of a special lighting and conveyor system.

7. Defendant, through its agents, assured [Central] that if its building were constructed in accordance with the plans the Board would execute a lease according to the terms set forth in finding Number 4.

8. Defendant's agents, continually and throughout all of the negotiations referred to herein, represented to [Central] that their actions were done in conformity with their instructions from the Liquor Control Board and done with the Board's full knowledge, approval and consent.

9. In reliance upon such representations, [Central] constructed or altered its premises at 3500 Industrial Road in accordance with the plans previously referred to.

10. The aforesaid construction, because of the low ceilings, and other unusual features, rendered [Central's] premises unfit for general warehouse purposes.

11. All of the aforesaid was done with the full knowledge of the members of the Board, they being aware that the acts of [Central] were done in reliance upon the representations made by the Board's representatives.

12. Subsequent to September, 1972, the Board moved furniture and other equipment into some portions of the building prior to occupancy thereof.

13. The Board approved the option to lease on November 1, 1972; however, that document

was never executed by the Department of Property and Supplies (now the Department of General Services) as agent for the Board.

14. The Defendant refused to occupy the premises and to deliver [Central] an executed copy of the lease.

15. Plaintiff subsequently made reasonable efforts to lease the aforementioned premises, but was unable to do so.

The LCB maintains, as it did below, that there is no contract for lease binding the Commonwealth because the statutory requirements that such lease be in writing and approved by the Department of Properties and Supplies (now the Department of General Services) were not complied with. *See Rustrum Realty, Inc. v. Department of Property & Supplies,* 35 Pa. Commonwealth Ct. 62, 384 A.2d 1043 (1978). Central, on the other hand, citing *Lowry v. Commonwealth,* 365 Pa. 474, 76 A.2d 363 (1950); *Merchants' Warehouse Co. v. Gelder,* 349 Pa. 1, 36 A.2d 444 (1944), says that its right to recovery rests in equity, not in contract, and that the Board of Claims had power to recognize and requite its so-called claim in equity. Central's argument is somewhat difficult to follow; it appears to say that equity may be invoked to recover money on account of actions of the Commonwealth officers in mere dealings for a lease, despite the fact that a statute provides that the Commonwealth is not bound until a lease is executed. It is true that the cases cited by Central support the proposition that the Board of Claims may redress a wide variety of claims other than those based on express contracts. They do not, however, support Central's thesis that equity may provide relief where there is no legal or statutory claim.

Initially, in both *Lowry v. Commonwealth, supra,* and *Merchants' Warehouse Co. v. Gelder, supra,* the claimants before the Board of Claims sought money damages against the Commonwealth. Equity acts only where there is no adequate remedy at law. *Department of Labor & Industry v. Altemose Construction Co.,* 28 Pa. Commonwealth Ct. 277, 368 A.2d 875 (1977). A claim for money damages is one ordinarily cognizable at law, not in equity. *Bauer v. P. A. Cutri Co. of Bradford, Inc.,* 434 Pa. 305, 253 A.2d 252 (1969). Second, the law is that equity does not afford relief to one whose rights are not established by principles of law or requirement of statute. Mr. Justice ROBERTS has recently written:

> Even recognizing that a court of equity has broad powers, '[i]t is a mistake to suppose that a court of equity is amenable to no law, either common or statute, and assumes the rule of an arbitrary legislator in every particular case' Blackstone's Commentaries on the Law 732 (B. Gavit ed. 1941). When the rights of a party are clearly established by defined principles of law, equity should not change or unsettle those rights. Equity follows the law. Hedges v. Dixon County, 150 U.S. 182, 14 S.Ct. 71 (1893); Bauer v. P. A. Cutri Co., 434 Pa. 305, 253 A.2d 252 (1969); Scott v. Waynesburg Brewing Co., 256 Pa. 158, 100 A. 591 (1917); Abrahams v. Wilson, 134 Pa. Superior Ct. 297, 3 A.2d 1016 (1939); see 2 J. Pomeroy, A. Treatise on Equity Jurisprudence §425 (5th ed. S. Symons 1941).

*First Federal Savings and Loan Association v. Swift,* 457 Pa. 206, 210, 321 A.2d 895, 897 (1974).[3]

---

[3] *First Federal Savings and Loan Association v. Swift, supra,* is interesting on the facts. The issue was whether a tax sale regularly conducted should be set aside in equity on the ground of a mistake of

Hence, one who invokes equity must demonstrate more than that he has been the victim of an asserted injury. The injury must be one which the law recognizes; that is, is cognizable in law.

Central's claim is in contract and must fail for the lack of a contract binding against the Commonwealth. Generally speaking there are two types of contracts, express and implied, with implied contracts further subdivided into contracts implied in fact and contracts implied by law:

> The distinction between express contracts and implied contracts involves no difference in legal effect, but lies merely in the mode of manifesting agreement. In further defining this difference, the courts have stated that an express contract is one formed when the terms of the agreement are declared by the parties, whereas an implied contract is one expressed by the conduct of the parties in the light of the surrounding circumstances.

> A contract may be implied in fact or implied in law, the distinction being that the former is an actual contract which arises where the parties agree upon the obligation to be incurred but their intention, instead of being expressed in words, is inferred from their actions in the light of the surrounding circumstances, while the lat-

the plaintiff in relying on erroneous information and failing to attend the sale. A majority of four of the six justices participating decided for a variety of reasons that the sale should not be set aside. A difference of opinion was expressed with regard to whether gross inadequacy of price provided an independent ground for setting aside a tax sale, three believing that it should. However, none of the other justices who wrote opinions disagreed with Justice Roberts' language which we have quoted in the text, or with his further quotation from other authority that "[w]henever there is a direct rule of law governing the case in all its circumstances, the [equity] court is as much bound by it as a court of law." 457 Pa. at 212, 321 A.2d at 898.

ter arises where the law imposes a duty upon a person, not because of any express or implied promise on his part to perform it, but in spite of any intention which he might have to the contrary.

*See* 8 P.L.E. §6. *See also, Cameron v. Eynon,* 332 Pa. 529, 3 A.2d 423 (1939).

A contract implied in law, called quasi contract, arises where one party is unjustly enriched at the expense of another. *Department of Public Welfare v. Adams County,* 30 Pa. Commonwealth Ct. 164, 373 A.2d 143 (1977). The cases principally relied on by Central were claims in quasi contract. In *Lowry v. Commonwealth, supra,* the Commonwealth benefited from road building materials it mistakenly took without permission from a claimant's property. In *Merchants' Warehouse Co. v. Gelder, supra,* the claimant provided, without contract, services incident to storage and distribution of liquor for the LCB thereby enriching the Commonwealth. The expenditures made by Central on its own property did not enrich the Commonwealth.

There clearly was no contract of lease binding on the Commonwealth. Section 207(e) of the Liquor Code,[4] 47 P.S. §2-207(e), provides that:

> Under this act, the [LCB] shall have the power and its duty shall be:
>
> . . . .
>
> (e) Through the Department of Property and Supplies as agent, to lease and furnish and equip such buildings, rooms and other accomodations as shall be required for the operation of this act.

Section 2402(d) of The Administrative Code of 1929,[5] 71 P.S. §632(d), provides that:

---

[4] Act of April 12, 1951, P.L. 90, *as amended.*

[5] Act of April 9, 1929, P.L. 177, *as amended.*

The Department of Property[6] and Supplies shall have the power, and its duty shall be:

. . . .

(d) To contract *in writing* for and rent proper and adequate offices, rooms, or other accomodations, outside of the Capitol buildings, for any department, board, or commission, which cannot be properly and adequately accomodated with offices, rooms, and accomodations in the Capitol buildings; and, in all cases in which the head of a department, for such department or for a departmental administrative board or commission within such department, or an independent administrative board or commission, with the approval of the Executive Board, has established or is about to establish a branch office in any city or place outside of the capital city, with the approval of the Board of Commissioners of Public Grounds and Buildings, to contract in writing for and rent such offices, rooms, and other accomodations, as shall be proper and adequate for such department, board, or commission. . . . *It shall be unlawful for any other department, board, commission, or agency of the State Government to enter into any leases. . . .* (Emphasis added.) (Footnote added.)

We have held in our recent case of *Rustrum Realty, Inc. v. Department of Property and Supplies, supra,* that the oral representations of agency personnel concerning Commonwealth plans to occupy the premises of a prospective lessor do not create a contract for lease binding upon the Commonwealth where Section

---

[6] Sections 19 and 22 of the Act of July 22, 1975, P.L. 75, No. 45, transferred the functions, powers and duties of the Department of Property and Supplies to the Department of General Services.

2402(d) of The Administrative Code of 1929 applies and has not been observed.[7] As *Rustrum Realty, Inc., supra,* makes clear, one contracting with the Commonwealth must see to the execution of the contract in the manner prescribed by statute and is bound to know the limitations of the authority of the government officials with whom he is dealing.

---

[7] *Rustrum Realty, Inc. v. Department of Property and Supplies, supra.* The claimant in *Rustrum* sued in the Board of Arbitration of Claims, demonstrating the possibility of confusion concerning jurisdiction over contract claims against the Commonwealth between the Board of Claims (operating under Section 1003 of The Fiscal Code, 72 P.S. §1003) and the Board of Arbitration of Claims (operating under the Act of May 20, 1937 (Act), P.L. 728, *as amended,* 72 P.S. §4651-1 et seq.). Section 4 of the Act, 72 P.S. §4651-4, provides that:

The Board of Arbitration shall have jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more.

Section 1003 of The Fiscal Code provides that:

The Auditor General and State Treasurer [i.e. the Board of Claims] shall continue to have the power to adjust and settle claims against the Commonwealth, as now provided by law. . . .

We do not here attempt to describe the jurisdictional boundaries of the two Boards. We do observe that Section 1003 was part of The Fiscal Code, Act of April 9, 1929, P.L. 343, and therefore predates the Act of May 20, 1937 creating the Board of Arbitration of Claims. While there have been Supreme Court cases postdating the Act of May 20, 1937 acknowledging, without reference to the Act of May 20, 1937, the Board of Claims' power to hear claims sounding in contract (see *Lowry v. Commonwealth, supra; Merchants' Warehouse Co. v. Gelder, supra,)* we have been unable to find any appellate court cases specifically addressing the issue of whether the Board of Claims and the Board of Arbitration of Claims have concurrent jurisdiction over claims against the Commonwealth arising in contract or whether the Board of Arbitration of Claims has exclusive jurisdiction over all such claims where the amount in controversy is $300.00 or more. We leave consideration of this issue to an appropriate future case.

Finally, Central says that the failure by the Board of Finance and Revenue to make findings of fact and conclusions of law in reversing the Board of Claims has in some fashion denied its procedural due process. We do not feel that constitutional due process is at issue. While it would be better for the Board of Finance and Revenue to explain its reversals, Central had a full hearing before the Board of Claims; and this Court has now considered the matter *de novo*.

We therefore enter the following:

### ORDER

AND Now, this 1st day of August, 1978, the petition for review of Central Storage and Transfer Co. of the decision of the Board of Finance and Revenue is dismissed. Unless exceptions hereto are filed within thirty (30) days of the filing of this Order as provided by law, judgment is directed to be entered in favor of the Commonwealth in no amount and against Central Storage and Transfer Co.