**SHOVEL TRANSFER AND STORAGE, INC., Petitioner,**

v.

**PENNSYLVANIA LIQUOR CONTROL BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 4, 1997.

Decided Aug. 1, 1997.

William G. Merchant, Pittsburgh, for petitioner.

Michael L. Plumley, Deputy Chief Counsel, Harrisburg, for respondent.

Gregory E. Dunlap, Deputy General Counsel, Harrisburg, for amicus curiae, Secretary of the Budget and Governor's Office of the Budget.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and FLAHERTY, JJ.

COLINS, President Judge.

Shovel Transfer, Inc. (Shovel) petitions for review of the decision of the Board of Claims dismissing the breach of contract claim Shovel asserted against the Pennsylvania Liquor Control Board (LCB). We affirm the Board of Claims' dismissal of the claim based on its finding that a valid contract did not exist between the parties.

After ten years and an extended tour through this Commonwealth's legal system, including two trips to the Supreme Court of Pennsylvania, the merits of Shovel's claim against the LCB shall finally be reviewed by this Court. Since there are two Supreme Court opinions, two Commonwealth Court opinions, and one opinion by the Board, we feel compelled to set forth the entire proce-

dural history of the case distinguishing that which has been decided and that which is currently before the Court.

## I. History of the Litigants

For thirty or more years Shovel had warehoused and distributed alcoholic beverages in southwestern Pennsylvania pursuant to contract with the LCB. In 1986 the LCB transferred the distribution district from Youngswood to Pittsburgh. Shovel was made aware of the geographical change and immediately engaged in locating a new facility to support the warehousing requirements of the LCB. A facility was located, inspected and approved by the LCB, and the LCB forwarded Shovel a document designated "Draft Contract" for Shovel's review. The "Draft Contract" was subsequently memorialized in a formal writing (hereinafter "agreement").

The parties to the agreement were the LCB and Shovel Transfer, Inc. The last page of the agreement contained the following typewritten provision, which is being relied upon by the LCB in supporting its position that an enforceable contract does not exist between the parties: "The parties intending to be legally bound hereby, have set forth their hands and seals this 10th day of November, 1986[ ]", signature lines for Shovel, LCB Chairman, LCB Chief Counsel, LCB Comptroller (comptroller), State Secretary for Budget and Administration (budget secretary), and a representative of the Attorney General's office follow. The contract was signed by all signatories except the LCB Comptroller and the Budget Secretary, who refused to affix their signatures because the contract was not the product of the normal bidding process. Subsequently, a Request for Proposal (RFP) was released for the project, and the contract was awarded to GENECO. Not receiving the contract it had anticipated, Shovel brought suit in Commonwealth Court.

## II. Case History

In Commonwealth Court, Shovel filed a petition for review in the nature of mandamus seeking declaratory and injunctive relief with the named defendants being LCB Comptroller Simpson and Budget Secretary Hershock (collectively "defendants"). The defendants answered by way of preliminary objections on jurisdictional grounds contending that jurisdiction over contract claims where the Commonwealth or agency is a party properly lies in the Board of Claims.[1] Judge MacPhail determined Shovel's action was not a contract claim, therefore, the jurisdiction of the Board of Claims had not been invoked. Judge MacPhail overruled the preliminary objections and defendants were directed to file an answer to petitioner's complaint thirty days thereafter. *See Shovel Transfer and Storage v. Simpson*, 112 Pa. Cmwlth. 129, 535 A.2d 251 (1987).

An Answer having been timely filed, the issue then before Commonwealth Court was whether the signatures of both the comptroller and the budget secretary were necessary for the formation of the contract. Cross-motions for summary judgment were filed by the parties. By memorandum opinion filed June 10, 1988, Judge MacPhail granted Shovel's motion for summary judgment, concluding that an enforceable contract existed between the parties. Defendants took a direct appeal to the Supreme Court.[2]

The Supreme Court in an opinion authored by then-Mr. Chief Justice Nix, found that

1. 42 Pa.C.S. § 761(a) provides:
   **§ 761. Original jurisdiction.**
   **(a) General rule.** -The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:
   (1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:
   . . .
   (iii) actions on claims in which immunity has been waived pursuant to Chapter 85 (relating to matters affecting government units) or

the Act of May 20, 1937 (P.L. 728, No. 193) referred to as the Board of Claims Act;
   (2) By the Commonwealth government, including any officer thereof, acting in his official capacity, except eminent domain proceedings.

2. 42 Pa.C.S. § 723(a) provides:
   **§ 723. Appeals from Commonwealth Court**
   **(a) General rule.**—The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the Commonwealth Court entered in

Commonwealth Court erred on the issue of jurisdiction.[3] Accordingly, Commonwealth Court was reversed and the case remanded to the Board of Claims for a decision on the merits of the complaint. *See Shovel Transfer and Storage v. Simpson,* 523 Pa. 235, 565 A.2d 1153 (1989).

The Board of Claims (Board) found that the signatures of the comptroller and budget secretary (hereinafter, collectively "Simpson") were a prerequisite to the formation of the contract and the absence of those signatures rendered the contract unenforceable. The Board dismissed the claim and Shovel filed a notice of appeal with the Board dated November 28, 1994. On December 14, 1994 the Board returned the notice to Shovel because it was improperly filed. On December 15, 1994, Shovel sent the notice of appeal to Commonwealth Court requesting that it be treated as a petition for review pursuant to Pa. R.A.P. 1503.[4]

The LCB filed a motion to quash to which Shovel filed an answer and alternatively a motion to file a petition for review *nunc pro tunc.* By order dated January 3, 1995, this Judge denied the motion to quash with direction that Shovel file an amended petition for review; the motion to proceed *nunc pro tunc* was denied as moot. On January 11, 1995, Shovel filed a petition for review in this Court.

The LCB filed a motion for reconsideration *en banc.* By order dated January 20, 1995, this Judge granted the motion for reconsideration *en banc.* In reviewing that motion, it was determined that although the petition for review was deemed timely filed pursuant to Pa. R.A.P. 1503, no issues had been preserved for appellate review because objections to the Board's order were untimely since they were not filed until January 11, 1995. Hence, Shovel's appeal was dismissed. Shovel's petition for allowance of appeal to the Supreme Court was granted.[5] In an opinion authored by Mr. Justice Castille, the Supreme Court reversed this Court, and the case was remanded to this Court for disposition on the merits of Shovel's petition for review. *See Shovel Transfer and Storage v. Pennsylvania Liquor Control Board,* 547 Pa. 210, 689 A.2d 910 (1997).

### III. Disposition of the Merits on Second Remand

### A. Scope of Review

In reviewing a decision of the Board this Court's scope of review is limited to a determination of whether the necessary findings of fact are supported by substantial evidence, or whether the Board erred as a matter of law. *State Highway and Bridge Authority v. E.J. Albrecht Company,* 59 Pa. Cmwlth. 246, 430 A.2d 328 (1981). The

any matter which was originally commenced in said court and which does not constitute an appeal to the Commonwealth Court from another court, a district justice or other government unit.

**3.** With that ruling, the finding of Judge MacPhail was essentially vacated.

**4.** Pa. R.A.P. 1503 provides:
If an appeal is taken from an order of a government unit, or if a complaint in the nature of equity, replevin, mandamus, or quo warranto, or a petition for a declaratory judgment or for a writ in the nature of certiorari or prohibition is filed against a government unit or one or more of the persons for the time being conducting its affairs, as such, objecting to a determination by any one or more of them, this alone shall not be a ground for dismissal, but the papers whereon the improvident matter was commenced shall be regarded and acted upon as a petition for review

of such governmental determination and as if filed at the time the improvident matter was commenced. The court may require that the papers be clarified by amendment.

**5.** 42 Pa.C.S. § 724(a) provides:

**(a) General rule.** -Except as provided by section 9781(f) (relating to limitation on additional appellate review), final orders of the Superior Court and final orders of the Commonwealth Court not appealable under section 723 (relating to appeals from Commonwealth Court) may be reviewed by the Supreme Court upon allowance of appeal by any two justices of the Supreme Court upon petition of any party to the matter. If the petition shall be granted, the Supreme Court shall have jurisdiction to review the order in the manner provided by section 5105(d)(1) (relating to scope of appeal).

Board is the sole fact-finder and as such, the Board determines the credibility of witnesses and resolves conflicts in the evidence. *Consolidated Rail Corporation v. Pennsylvania Liquor Control Board,* 90 Pa.Cmwlth. 595, 496 A.2d 422 (1985).

## B. Issues on Appeal

**1. Whether there is substantial evidence to support the Board's finding that the parties did not enter into an enforceable contract.**

▉ It is Shovel's contention[6] that the LCB breached the contract by its failure to perform in accordance with the agreement and that the failure of the comptroller and budget secretary to sign the agreement does not excuse the LCB from performance thereof. Additionally, Shovel contends that a reasonable interpretation of the agreement does not support a claim that the parties intended to give the comptroller and budget secretary unrestricted disapproval rights after entering what purports on its face to be a legally binding contract. Shovel contends the signing of the agreement by the comptroller and budget secretary was a ministerial function to be performed by defendants but not a condition of the contract.

To the contrary, the LCB argues there was no breach of contract as the inclusion of the subject clause in the agreement rendered its efficacy contingent upon the approval of all proposed signatories. The LCB contends the contract is not enforceable since it has not been fully executed.

The Board has agreed with the LCB's characterization of the contract as unenforce-

able finding that the signatures were essential to the formation of the contract. The Board also found that Shovel failed to obtain necessary certificates as required under the agreement. Thus, there were preconditions of the contract Shovel failed to perform rendering the contract unenforceable.

In reaching those conclusions the Board reviewed the contract and related documentation. The Board relied on evidence establishing the past practice of the parties (*i.e.,* past contracts between the parties containing the same clause were signed by the designated authorities). The Board considered LCB correspondence accompanying the contract stating that it was necessary to obtain the signatures of third parties (*i.e.,* the comptroller and budget secretary). The Board concluded Shovel was aware that obtaining the signatures of, among others, the comptroller and budget secretary was necessary to a fully executed contract.

After considering the aforementioned facts and relying on *Franklin Interiors v. Wall of Fame Management Co.,* 510 Pa. 597, 511 A.2d 761 (1986), the Board concluded that contract formation was predicated upon obtaining the signatures of both the comptroller and the budget secretary. In *Franklin Interiors* the parties negotiated a contract containing a proviso that contract approval was contingent upon obtaining the signature of a company officer. The inclusive language was a specific condition of the contract. In not signing the contract, the company officer disapproved the contract, and the Supreme Court of Pennsylvania held that "the formation of a valid contract was expressly conditioned upon the written approval of [the com-

---

6. The questions as presented in the brief filed on behalf of Shovel are as follows:
  (1) Was a valid and enforceable contract entered into between Shovel Transfer and the PLCB?
  (2) Did the PLCB pre-condition the formation of a contract on the approval of the Budget Secretary and the Comptroller?
  (3) Is there substantial evidence in the record to support a finding that Shovel failed to satisfy contingencies in the Contract?
  (4) Is there substantial evidence in the record to support a finding of insufficient sole-source

justification for renegotiation of the contract between Shovel and the PLCB
  (5) Is there substantial evidence in the record to support a finding that Shovel justifiably relied upon the conduct and assurances of PLCB officials in undertaking to acquire the warehouse and incur expense to prepare it for PLCB operations.
Brief of Appellant. Questions 1 and 2 are crucial to the disposition of this appeal and have been redrafted so as to conform with this Court's scope of review.

pany officer]." *Id.* at 600, 511 A.2d at 763. Approval not having been obtained, the contract was unenforceable as it was not properly executed. *Id.*

While *Franklin Interiors* is analogous to this action it is nonetheless contradistinct. The agreement at issue herein involved a state agency and an independent contractor. The agreement contained no express proviso conditioning the contract on the approval of parties outside the contract. Here, unlike *Franklin Interiors,* we are asked to determine when a government unit becomes contractually obligated to a contractor—whether, at the time the contract is awarded or when the contract has been formally signed. Thus, the analysis employed to resolve this matter is distinct from that employed by the Board.

■ Notwithstanding general principles of contract law, in determining the validity of a state agency contract three matters must be considered. First, had the state agency the power to enter into the contract, and if so, whether it was entered into by the proper entity,[7] *i.e.,* department, board, committee, officer or agent. Second, was the contract entered into by proper mode, *i.e.,* does a statute govern contract formation.[8] Third, whether it is evident that a contract was formed, and if so, whether it must be in writing, and if so whether the writing is contingent upon other conditions, such as, signatures or approvals.[9] If the mode of contracting is not prescribed by statute, a state agency may make a contract in the same manner as other corporations or partnerships or individuals.[10]

The theory of the case advanced by the LCB relies on *Franklin Interiors* to support the theory that the parties, by including countersignatures in the agreement, mutually assented to the condition that obtaining the countersignatures was a necessary component of the contract. In contradistinction, Shovel advances the argument that the signature of the comptroller and budget secretary are superfluous; therefore, a binding contract was formed when the signatures of the LCB Chairman, LCB Chief Counsel, and the President of Shovel were affixed to the contract.

■ "Mutual assent is essential to the formation of a binding contract," and "must be manifested by one party to another." 17A Am.Jur.2d § 28. "Assent in the sense of the law is a matter of overt acts and expressions." *Id.* In this Commonwealth it is well established that "parties may bind themselves contractually prior to the execution of a written document through mutual manifestations of assent, even where a later formal document is contemplated." *Krause v. Great Lakes Holdings, Inc.,* 387 Pa.Superior Ct. 56, 563 A.2d 1182, 1185 (1989). "If the parties agree upon essential terms and intend them to be binding, 'a contract is formed even though they intend to adopt a formal document with additional terms at a later date'." *Johnston v. Johnston,* 346 Pa. Superior Ct. 427, 499 A.2d 1074 (1985) (citation omitted). Where however the parties contemplate that their agreement cannot be considered complete before it is reduced to writing, no contract exists until the execution of the writing. *Essner v. Shoemaker,* 393 Pa. 422, 143 A.2d 364 (1958).

The Board believed the LCB had expressed its intent not to be contractually bound to Shovel until the agreement at issue was approved and executed by all designated signatories. In considering the past dealings between the parties, and written correspondence accompanying the agreement, there is substantial evidence to support that position.

The Board rejected Shovel's contention that the sole reason for signature lines for

7. *First National Bank of Verona, for Use of Laris v. Walsh,* 349 Pa. 241, 37 A.2d 130 (1944).

8. *Commonwealth v. Seagram Distillers Corporation,* 379 Pa. 411, 109 A.2d 184 (1954); *Carriage Tours, Inc. v. Valley Forge Park Commission, Harrisburg,* 37 Pa.Cmwlth. 375, 390 A.2d 902 (1978).

9. *Accu-Weather, Inc. v. Thomas Broadcasting Co.,* 425 Pa.Superior Ct. 335, 625 A.2d 75 (1993).

10. *Dunlap v. Erie Water Commissioners,* 151 Pa. 477, 25 A. 60 (1892).

the comptroller and budget secretary was a matter of form rather substance. Such an interpretation is not credible in light of the evidence that supports a finding that the parties intended that the comptroller and budget secretary were required signatories to the contract. We therefore affirm the Board's conclusion that the absence of the signatures of the comptroller and budget secretary renders the contract unenforceable.

## 2. Remaining Issues.

■ Whether the parties entered into a binding contract is the gravamen of the case. Resolution of that issue was embedded in the determination that there was a mutual manifestation of the parties to precondition contract formation on obtaining the signatures of the parties, as well as the countersignatures of third parties, i.e., the comptroller and budget secretary. Having affirmed the finding that the signatures were components necessary to the formation of the contract, whether appellant's justifiably relied on actions by the LCB is rendered irrelevant to the disposition of the case.[11]

■ The theory of justifiable reliance presupposes one party's reliance on another's actions to that party's detriment. Here the facts do not support such a conclusion. The parties to this action had a written agreement detailing, among other things, the signatories to the contract. There is evidence establishing that the contract was not final until all proposed signatories affixed their signatures to the document. Shovel was aware of and agreed to that condition of the contract. The condition did not come to fruition; thus no contract was formed. There is no evidence establishing that Shovel was told to perform the contract prior to approval. Therefore, Shovel's claim that it justifiably relied upon the actions of the LCB are not supported by the evidence of record.

## CONCLUSION

Authority exists for the general premise that a public contract has its inception in the award, as distinguished from the formal signing of the contract, and is binding from that time on. *Muncy Area School District v. Gardner*, 91 Pa.Cmwlth. 406, 497 A.2d 683 (1985). However, the premise belies two troubling areas, first in what context is the word "award" used and second, in what context is the term "formal signing" understood. This case confronts both those issues.

■ In the case at hand, the writing at issue was not a contract in the sense of the law, but rather an agreement between the parties. The contract could not be awarded until signed by all persons presented as signatories to the agreement. The signing by all signatories was then a condition of the contract. That conclusion is based on evidence of record establishing that the parties assented to the inclusion of that condition[12] in the agreement. Here, the signing of the contract was not a "formality" but was, as previously stated, a condition of the contract, that if unfulfilled rendered the contract unenforceable.

■ It is disconcerting to realize the extent of Shovel's efforts expended to accommodate the LCB. It is equally disconcerting to know that neither the comptroller nor the budget secretary notified the LCB of their objections to the contract until after a draft contract was put forth. However, those factors do not alter the written agreement or the body of law that requires persons entering into contracts to be cognizant of each and every part and condition of a contract. For when a contract is disputed in court, "a court's review of a contract is confined to [the court's] interpretation of the agreement." *Steuart v. McChesney*, 498 Pa. 45, 51, 444 A.2d 659, 661 (1982). When "interpreting a contract, the intention of the parties must be ascertained from the complete writing and each and every part of it must be

---

11. *See generally Central Storage and Transfer Co. v. Kaplan*, 37 Pa.Cmwlth. 105, 389 A.2d 711 (1978), where this Court held that expenditures made by a storage company for alterations of its warehouse in *anticipation* of a lease with the LCB *did not* give rise to a cause of action against the Commonwealth based on implied contract.

12. "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Restatement 2d Contracts, § 224.

taken into consideration and given effect if reasonably possible." *International Organization Master, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates and Pilots of America, Inc.,* 497 Pa. 102, 108–109, 439 A.2d 621, 624 (1981). Consequently, "persons contracting with a governmental agency must, at their peril, know the extent of the power of its officers making the contract," [13]as well as, the power of each word and condition set forth in the contract. The courts cannot favor past practices of the parties over the words contained in a written agreement, but rather must mold the two into one when ascertaining the intent of the parties.

Accordingly, the order of the Board of Claims is affirmed.

## ORDER

AND NOW, this 1st day of August, 1997, the order of the Board of Claims in the above-captioned matter is affirmed.

SMITH, J., dissents.

13. *Seagram Distillers,* 379 Pa. at 417, 109 A.2d at     188 (1954).